[Crim. No. 6419.    Second Dist., Div. Two.    Nov. 20, 1959.]

THE PEOPLE, Respondent, v. FRANK NAPOLITANO et al., Defendants; DONALD FRANK HARRIS, Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), and Richard W. Erskine, Deputy Public Defender, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Ernest E. Sanchez, Deputy Attorney General, for Respondent.

FOX, P. J.—The district attorney of Los Angeles County filed an information in two counts charging, in Count I, that Frank Napolitano and Donald Frank Harris, the appellant

herein, committed the crime of robbery (Pen. Code, § 211) in that on or about March 7, 1958, they robbed Mary Ann Velasquez of $107.

Count II charged that Napolitano and Harris committed the crime of attempted robbery (Pen. Code, §§ 211, 664) on the same date in that they feloniously attempted to take from the person and possession of George Velasquez goods and personal property in his possession. It was also alleged in each count that at the time of the commission of this offense the defendants were armed with a deadly weapon, to wit, a .32 caliber automatic.

The defendants had a jury trial. The jury retired for deliberations at 10:10 a.m. on June 4th. Not having arrived at a verdict by late afternoon, the jury was sent to a local hotel for the night. Two deputy bailiffs were sworn to take charge of the jury in addition to two deputy sheriffs sworn previously. The jury returned to the courtroom on June 5th, and after deliberating from 8:30 a.m. to 10:06 a.m. returned to the court with the verdicts finding appellant Harris and his codefendant Napolitano guilty as to all charges. The written verdicts were dated June 4, 1958. The court inquired of the foreman whether the verdicts had been arrived at while the jury was confined during the night at the hotel. The foreman replied: "That is correct." Appellant and his codefendant waived polling of the jury and it was discharged.

Appellant's motion for a new trial was argued and denied and he was sentenced to the state prison for the term prescribed by law, the sentences to run concurrently. Harris has appealed.

Mr. and Mrs. Velasquez owned and operated a drive-in restaurant in the city of South Gate. At about 11:25 p.m. on March 7, 1958, while the restaurant was still open for business but without any customers, two men came in through the rear door and announced, "This is a stick-up." Each had a handkerchief in his left hand and when the door opened each covered his nose and mouth with the handkerchief. Mr. Velasquez saw this covering movement. Napolitano had a gun which appeared to be a .32 caliber automatic. He ordered Mr. Velasquez to lie down on the floor face down. Harris ordered Mrs. Velasquez to empty the money in the cash register into a bag, which he took. Mr. Velasquez and Napolitano got into a scuffle which resulted in Napolitano's dropping the handkerchief from his face, thus providing Mr. Velasquez with a full view of his face at close range. The scuffle continued

through the back door and into the parking lot. As they started through the door, Harris hit Mr. Velasquez with the money bag. At that point, Mrs. Velasquez grabbed Harris' right arm and saw the side of his face; he turned and ran. A week later Mr. Velasquez identified Harris and his codefendant at a police line-up consisting of five persons. Later, and on a different occasion, Mrs. Velasquez also identified appellant and Napolitano too.

Appellant's defense consists of an attempt to establish an alibi.

In seeking a reversal defendant contends (1) that "the verdicts are void because they were reached by the jury outside the jury room, and while the court was adjourned"; and (2) that the court made such a lengthy explanation of the verdicts of guilty to the jury that it may have been led to believe that the judge thought the defendants should be convicted. We find no merit in either of these contentions.

In support of his position that the verdicts are void appellant relies on the fact that the jury deliberated at night while the court was in adjournment and not available to receive a verdict and to advise the jury, and the fact that the deliberations were carried on at a hotel not shown to be a private and convenient place. There is no requirement in the Penal Code that the jury must deliberate only in a courtroom or in an official jury room; nor is there any provision in the law making jury deliberations in a place other than a courtroom or official jury room void. As a practical matter, we see no reason why a jury may not deliberate with complete propriety at a hotel to which they have been sent for the night. There is nothing sacrosanct about the place where such deliberations are carried on so long as it is private and convenient. What is important is that the jurors have sufficient time and opportunity to fully explore the case and arrive at a considered and fair verdict. This often takes considerable time. If the jurors are willing to work on the case during the evening, we see no reason why they should not be permitted to do so. They may well be able to resolve many problems which otherwise would have to be deferred until the next day, and thus unnecessarily extend the time of the trial and its expense. The fact that the court is not then in session and not available to advise the jury is no justification for not permitting the jurors to deliberate at night. If questions arise which require clarification by the court, or the reading

of testimony, they can very properly be set aside and be presented to the court when it reconvenes the next morning.

It is a reasonable inference that the deliberations of the jury were conducted ''in a private and convenient place'' since two extra deputy bailiffs were sworn to take charge of the jury. Under section 1128, Penal Code, such deputies ''must be sworn to keep them [the jury] together in some private and convenient place, and not to permit any person to speak to or communicate with them. . . .'' The presumption is that ''official duty has been regularly performed.'' (Code Civ. Proc., § 1963, subd. 15.) There is nothing in the record that tends to overcome this presumption.

Furthermore, the record reveals that the jury resumed deliberations in the regular jury room at 8:30 the next morning and returned to the courtroom with their verdicts finding Harris and his codefendant guilty at 10:06 a. m. Thus the jury deliberated in the regular jury room for more than an hour and a half that morning. It is a reasonable inference that they reconsidered their decisions of the previous evening and reaffirmed the conclusions which they had arrived at on the night before. Thus the verdicts which were handed to the court were the result of the deliberations of the jury during the afternoon and evening of June 4th and for a period of an hour and a half on the morning of June 5th. In the premises, these verdicts are not invalid. In this connection it should be noted that appellant waived polling of the jury and did not urge this point in his argument on the motion for a new trial.

Appellant argues that the court, in its explanation of the verdicts to the jury, iterated and reiterated the complexities of returning guilty verdicts, and thus may have influenced the jury to return verdicts against the defendants. The explanation given by the court is contained in a supplemental reporter's transcript. While the explanation is somewhat repetitious, it is conceded by appellant that ''the language of the judge in explaining the verdicts was technically correct.'' We agree with appellant's statement in this regard. From a reading of the explanations of the verdicts given by the court, it does not appear that the court unreasonably dwelt on the guilty verdicts, especially when the explanations are considered in the light of the fact that there were two defendants, each charged with two counts of robbery, and each charged with being armed at the time of the commission of the offenses. It is obvious that an explanation of the guilty verdicts under these circumstances, of necessity, takes a

longer time and more words than the explanation of a simple not guilty verdict. The trial judge was trying to be meticulous in the exercise of his judicial responsibility. We see no basis for holding that the court's explanations of the verdicts were either erroneous or resulted in any prejudice to the appellant.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.